UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-61233-CIV-MARRA

CHARITY AMPONSAH, et al,

    Plaintiffs,

vs.

MEDMARC CASUALTY INSURANCE
COMPANY, a Vermont and Virginia
Corporation, THE LAW OFFICES OF
WILLIAM H. BATALLAS, P.A.; and
WILLIAM H. BATALLAS, individually,

    Defendants.
_____/

## OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court on Defendant's, Medmarc Casualty Insurance Company ("Medmarc"), Motion for Summary Judgment [DE 21]. The motion is fully briefed and ripe for review. The Court has reviewed the motion, response, and reply, the entire file in this case, and is otherwise duly advised in the premises.

### I. Undisputed Material Facts

B.W.C. Investments, Inc. ("B.W.C."), and its former president and sole shareholder, Brian Calvert, were developing real estate projects. [Debby Hockley Aff. ¶ 4, DE 28-1]. Plaintiffs, along with other purchasers, were buyers of yet-to-be-built condominiums and townhouses pursuant to purchase and sale contracts entered into with B.W.C. [Compl., DE 1-1]. William H. Batallas ("Batallas") was the designated escrow agent for the funds advanced pursuant to these contracts. [Compl., DE 1-1; Hockley Aff. ¶ 4, DE 28-1]. B.W.C. provided

Batallas with Plaintiffs' and other purchasers' deposit monies to hold in his attorney trust account. [Hockley Aff. ¶ 9, DE 28-1]. Batallas disbursed some of the escrow deposit funds to third parties. [Compl., DE 1-1].

B.W.C. and Brian Calvert filed suit against Batallas and Batallas' title company in *B.W.C. Investments, Inc., et al., v. James W. Chancelor, et. al*, Case No.: 06-04211-21, alleging fraud, conversion, breach of contract, breach of fiduciary duty, negligence, gross negligence, and constructive trust. [DE 21-4]. The complaint sought actual damages in the amount of $350,000.00 from William H. Batallas and the P.A. *Id.*

The P.A. had a Lawyer's Professional Liability insurance policy issued by Medmarc. Medmarc, therefore, retained Gary Shendell, Esq., of Shendell & Pollock, P.L., to defend Batallas and the P.A. in the suit filed by B.W.C. and Brian Calvert. [Alan L. Landsberg, Esq. Sworn Statement ("Statement") ¶4, DE 21-6; Gary Shendell, Esq. Statement ¶3, DE 21-7]. B.W.C. voluntarily dismissed Batallas and the P.A. from the lawsuit. [Order dated Oct. 5, 2006, DE 21-8].

Batallas and the P.A. filed an interpleader action agasint B.W.C. and various defendants in *William Batallas and William H. Batallas, P.A. v. B.W.C. Investments, et. al.*, Case No. 06-017994-13. [Interpl. Compl., 21-9]. In the Interpleader Complaint, Batallas admitted to holding $582,010.00 of contract deposit funds in his attorney trust account and disbursing $262,244.00 to several third parties. *Id.* Batallas sought to interplead the balance of the funds in his trust account totaling $323,756.26. *Id.* He failed to name Plaintiffs from the current case as interested party defendants, and they intervened. [Ans., DE 21-10]. The Intervening Plaintiffs filed verified statements of claim and requested that the court order Batallas to account for all of the real estate

deposit monies and return the deposit monies to the Intervening Plaintiffs. [Verified Statements of Claim, DEs 21-1, 21-2, 21-3].  Batallas and the P.A. filed a to dismiss the Intervening Plaintiffs' verified statements of claim.  The motion was denied in part and granted in part. [Order dated Oct. 27, 2008, DE 28-3].

On two occasions Medmarc's attorney attempted to take Batallas' examination under oath as required by the liability insurance policy, and both times Batallas failed to appear.  [Landsberg Statement ¶¶6-12, DE 21-6; Certificates of Nonappearance, Des 21-12, 21-15]. Medmarc also requested documents from Batallas that he failed to produce. [Landsberg Statement ¶14, DE 21-6].  Batallas lost contact with his attorney around October or November 2009.  [Landsberg Statement ¶13, DE 21-6; Shendell Statement ¶¶4-5, DE 21-7]. Shendell then withdrew as counsel. [Order dated Nov. 23, 2009, DE 21-21].

The Intervening Plaintiffs, who are also the Plaintiffs in the present case, then filed a motion for summary judgment in the interpleader action. [Mtn., DE 21-23].  They also filed a motion for direction when their counsel received a check in the amount of $323,756.26 from Batallas. [Mark F. Booth, Esq. Aff. ¶5, DE 28-8].  The court in the interpleader action granted final summary judgment in favor of the Intervening Plaintiffs and against Batallas, the P.A., B.W.C., and Brian Calvert, individually, jointly and severally, for the principal amount of $428,237.00 plus prejudgment interest, for a total of $584,811.95. [Order dated Feb. 17, 2010, DE 21-23].  The court also allowed the Intervening Plaintiffs' counsel to deposit the check to be held in trust. [Booth Aff. ¶6, DE 28-8].  At the appropriate time, the Intervening Plaintiffs' counsel disbursed the check to the Intervening Plaintiffs and another individual. [Booth Aff. ¶7, DE 28-8].

Plaintiffs initiated the present action against Defendant Medmarc, Defendant P.A., and Defendant Batallas seeking a declaratory judgment that (1) the Medmarc professional liability policy issued to the P.A. affords coverage on behalf of Batallas and the P.A. for the multiple claims asserted by Plaintiffs and reduced to the summary final judgment in the prior action; (2) Medmarc is obligated to pay Plaintiffs the balance owed on the summary final judgment entered against Batallas and the P.A.; and (3) Plaintiffs are entitled to reimbursement of costs expended in bringing this action and such other relief as may be deemed appropriate. [Compl., DE 1-1].

## II. The Policy

Medmarc issued a preferred lawyers professional liability insurance policy, number 08 APFL00190, to the P.A., for the policy period of February 9, 2007, through February 9, 2008. [DE 21, Ex. C]. The relevant policy provisions from the insurance policy are as follows:

G. <u>Assistance and Cooperation of the "Insured"</u>

> All "Insureds" shall cooperate with the Company's investigation of coverage under this policy and/or the defense of "Claims."  All "Insureds" shall, upon the Company's request, submit all documents requested by the Company and submit to an examination and interrogation by a representative of the Company, under oath, if required, and shall attend hearings, depositions and trials and shall assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses, and in the conduct of suits, as well as in the giving of a written statement or statements to the Company's representatives and meeting with such representatives, all without charge to the Company, except as otherwise provided in SECTION III, C. Loss of Earnings Allowance.  The "Insured" shall further do whatever is necessary to preserve, secure and effect any rights of indemnity, contribution, subrogation or apportionment which the "Insured" may have against others and cooperate with the Company as to pursuing those rights.  The "Insured" shall not exercise the "Insured's" right to either reject or demand the arbitration of any "Claim" made against the "Insured" except in accordance with the written instructions of the Company.  The "Insured" shall not, except at the "Insured's" own cost, make any payment, admit any liability, settle any "Claims", assume any obligation or incur any expense without the written consent of the company.

I. Action Against the Company

>No action shall lie against the Company unless, as a condition precedent thereto, the "Insured" shall have fully complied with all the terms of this Policy, nor until the amount of the "Insured's" obligation to pay shall have been fully and finally determined either by judgment against the "Insured" after actual trial and appeal, if any, or by written agreement of the "Insured", the claimant and the Company. Nothing contained in this Policy shall give any person or organization the right to join the Company as a co-defendant in any action against the "Insured" to determine the "Insured's" liability.  Bankruptcy or insolvency of the "Insured" or of the "Insured's" estate shall not relieve the Company of any of its obligations hereunder.

*Id.*

### III.  Standard of Review

Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial responsibility of showing the court, by reference to the record, that there are no genuine issues of material fact that should be decided at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When the non-moving party bears the burden of proof on an issue, the moving party may discharge its burden by showing that the materials on file demonstrate that the party bearing the burden of proof at trial will not be able to meet its burden.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a moving party has discharged its burden, the nonmoving party must "go beyond the pleadings," and, by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial.  *Celotex,*

477 U.S. at 324.  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electr. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  When deciding whether summary judgment is appropriate, the Court must view the evidence and all reasonable factual inferences therefrom in the light most favorable to the party opposing the motion.  *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir. 1998) (citations and quotations omitted).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).  A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990).  However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir.1989).

## IV. <u>Discussion</u>

Because the Court is sitting in diversity, Florida substantive law applies.  *See, e.g., Admiral Ins. Co. v. Feit Mgmt. Co.*, 321 F. 3d 1326, 1328 (11th Cir. 2003) ("Sitting in diversity, we apply the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result.").

### A. <u>Lack of Cooperation</u>

Medmarc argues in its Motion for Summary Judgment that Batallas materially breached

the insurance policy by failing to appear for two examinations under oath, failing to produce requested documents, and failing to cooperate with the attorney retained by Medmarc for his defense. [DE 21].  Medmarc asserts that, because of Batallas' failures, it is not obligated to indemnify Plaintiffs.  *Id.*  Plaintiffs argue in response that Medmarc has not conclusively established that Batallas' alleged failure to cooperate was a material breach of the policy. [DE 28].  Plaintiffs also assert that Medmarc has not conclusively established that it was substantially prejudiced by Batallas' alleged lack of cooperation or that Batallas' testimony would have benefitted Medmarc.  *Id.*  Finally, Plaintiffs assert that Medmarc has failed to conclusively establish that Medmarc exercised diligence and good faith in trying to obtain Batallas' cooperation.  *Id.*

Under Florida law, the four elements to a cooperation clause claim are the following: "(1) the insured failed to cooperate as required by the insurance policy; (2) the failure to cooperate was material to the determination of the claim; (3) the failure to cooperate caused the insurer substantial prejudice; and (4) the insurer exercised due diligence and good faith in bringing about the insured's compliance with the cooperation clause." *Allstate Fire & Cas. Ins. Co. v. Ho*, No. 11-60724-CIV, 2012 WL 442980, at *9 (S.D. Fla. Feb. 10, 2012)(citing *Stewart Sleep Ctr., Inc. v. Atl. Mut. Ins. Co.*, 860 F.Supp. 1514, 1518 (M.D. Fla. 1993)).  The insurer has the burden of showing that it has suffered substantial prejudice. *Ramos v. Nw. Mut. Ins. Co.*, 336 So.2d 71, 75 (Fla.1976).  Moreover, the issue of whether the insured's failure to cooperate causes substantial prejudice to the insurer, thereby releasing it of its obligation to the insured, is usually a question of fact.  *Id.*  If the facts are admitted, however, it may be a question of law instead.  *Id.*

The Court notes that the cases cited by Medmarc relate to conditions precedent, not

7

cooperation clauses. *See Coconut Key Homeowners Assoc., Inc. v. Lexington Ins. Co.*, 649 F.Supp.2d 1363, 1369 (S.D.Fla. 2009) (distinguishing between the two types of insurance provisions). Because the insurance clause at issue is a cooperation clause, the fact that Batallas failed to produce documents, appear for examinations under oath, and assist in his defense is not sufficient to warrant that summary judgment to be granted as a matter of law. Plaintiffs appropriately argue that Medmarc has not demonstrated, as a matter of law, materiality, substantial prejudice, or that Medmarc exercised due diligence and good faith.

With regard to materiality, there is evidence that Batallas did participate in his defense for some period of time, even if his cooperation admittedly ceased around the end of 2009. Batallas stated during his deposition that he did send his attorney an executed affidavit to attach to the summary judgment motion. [Batallas Depo., 74-75, DE 23]. He also stated that he tried to text Shendell & Pollock from the hospital. *Id.* at 76, 132. The Court will not grant summary judgment based upon Batallas' alleged lack of cooperation because there are genuine issues of material fact regarding the materiality of his lack of cooperation.

Moreover, there are genuine issues of material fact relative to whether Batallas' lack of cooperation caused Medmarc substantial prejudice. Plaintiffs contend that the outcome of the underlying litigation against Batallas and the P.A. would have been different had Batallas cooperated with his counsel. Plaintiffs' argument is speculative and thus factual questions as to the probable outcome of the litigation exist. Thus, summary judgment based on the question of Batallas' lack of cooperation can not be granted.

### B. Collateral Estoppel

Medmarc contends that collateral estoppel bars re-litigation of coverage under the policy

because Medmarc has already filed a complaint for declaratory judgment regarding the existence of coverage under the Medmarc policy for defense or indemnification. [DE 21]. Plaintiffs argue that the collateral estoppel doctrine does not apply here because Plaintiffs were not parties to the previous action, and Plaintiffs were not in privy with Batallas. [DE 28].

The term "issue preclusion encompasses the doctrines once known as 'collateral estoppel' and 'direct estoppel.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 n.5 (2008).  In the Eleventh Circuit, issue preclusion operates when:

> (1) the issue at stake is identical to the one involved in the prior litigation;
> (2) the issue must have been actually litigated in the prior suit;
> (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgement in that action;
> (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

*CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1317 (11th Cir.2003).[1]

Here Medmarc argues that Plaintiffs should be precluded from litigating the same issues essential to judgment in *Medmarc Casualty Insurance Company v. Law Offices of William H. Batallas, et al.*, 0:09-cv-61876-WPD. Medmarc's argument is rejected because Plaintiffs were not party to the preceding action and have not had a full and fair opportunity to litigate the issues.

### Conclusion

Based on the foregoing, it is hereby ORDERED AND ADJUDGED that Defendant's

---

[1] "[F]ederal preclusion principles apply to prior federal decisions, whether previously decided based on diversity or federal question jurisdiction." *CSX Transp.*, 327 F.3d at 1316.

Motion for Summary Judgment [DE 21] is DENIED.

DONE AND ORDERED in Chambers at West Palm Beach, Palm Beach County, Florida, this 8th day of May, 2012.

_____
KENNETH A. MARRA
United States District Court

Copies furnished to:
all counsel of record